P. A. OESTEREICH, Appellee, v. WILLIAM W. LESLIE, Appellant.

No. 40535.

JANUARY 13, 1931.

REHEARING DENIED APRIL 10, 1931.

Ralph Dykes and G. C. Dalton, for appellant.

Swan, Martin & Martin, for appellee.

WAGNER, J.—Appellant's grounds for reversal may properly be summarized as follows: (1) that the court erred in overruling his motion for a directed verdict made at the close of plaintiff's evidence and renewed at the close of all of the evidence; (2) that the court erred in the giving of certain instructions; (3) that the court erred in refusing to give certain requested instructions; (4) that the court erred in the rulings relative to the introduction of testimony; (5) that the court erred in holding that plaintiff's petition states a cause of action; (6) that the verdict of the jury is contrary to the law as given by the court in the instructions.

Appellant's motion for a directed verdict may be properly summarized as follows: (1) the plaintiff, at the time of his injury, was not acting within the scope or course of his employment; (2) that plaintiff assumed the risk arising by reason of the defective condition of the clutch; (3) that there is no evidence to show that the claimed defect in the clutch was the proximate cause of plaintiff's injury; (4) that the evidence is insufficient to support a verdict for the plaintiff.

If the jury, from testimony which is uncontradicted, and from that offered by the plaintiff and the fair inferences to be drawn therefrom, could properly find for the plaintiff on the issues joined, then the court did not err in the overruling of defendant's motion for a directed verdict. We will briefly summarize such testimony. The defendant is the owner of a

large farm, and since 1918 had operated tractors in connection with his farming operations. In July 1927, he purchased a new Hart-Parr 28-50 tractor. The plaintiff's business for ten years or more prior to the employment was that of a blacksmith, although, during the farming season of 1927 he was engaged in the pursuit of farming a rented farm. He was employed by the defendant to operate this tractor for threshing, hulling of clover, plowing and other work in connection with farming operations, in which a tractor is ordinarily used. The plaintiff had very little experience in the driving or operation of tractors. One, Lindeman, residing about fourteen miles distant, was the agent for the Company and sold the tractor to the defendant. The appellant knew of appellee's general business of blacksmithing prior to the time of the employment. While the appellant testifies that the appellee told him that he was a master mechanic, this is denied by the appellee, who testified that he told the appellant that he thought he could run or operate the tractor. The appellee, and his family and the appellant resided in the same neighborhood. The operation of the tractor was first begun on July 14th, 1927, being used at that time for threshing purposes. Within a week or so, there was trouble with the clutch, it would slip. In order to engage the power for use, the clutch lever is pulled backward, and to disengage it, (throw it out of gear) it is pushed forward. This clutch would stick so that it was quite difficult to disengage, the plaintiff being compelled to kick it in order to bring about the disengagement. When the trouble first began, the appellee drove to the appellant's house and "told him to get the tractor man at once, that I could not do anything with that clutch, the clutch was about gone, and to get the tractor man at once from the factory. He (the appellant) said he would. I asked him a few days later and he claimed the Hart-Parr people didn't have a man at that time, but they would send one as soon as they could." New lining or facing was put in but this did not remedy the trouble. The appellee testified "that the face plate wasn't true, that about one-third of it had never touched, it was rusty—and the rest of it—two-thirds was quite rough, but it was bright, it had been working, but it didn't seem to be true, it had evidently tore the lining of the clutch." He further testified that on Sunday prior to the accident, he and the appellant put in a

disc or clutch plate but that this did not remedy the defect; that after it was put in, he called the appellant's attention to the defective condition and to the "wobble" in the clutch and that it had considerable play endways; that the tractor was not used until the following Friday, when the accident occurred; that sometime during the week, appellant called at the home of appellee and directed him to use the tractor to finish the plowing, as it was getting late; that appellee again called his attention to the defective condition of the clutch, "that it was so hard at times to disengage that clutch" and that he had to disengage it so often in plowing; that the appellant at that time promised to get the repairs; that the appellant directed him at that time to finish plowing the small piece northwest of the house and then to go into the next field—the field lying north thereof. As to this conversation at the home, the plaintiff is corroborated by the testimony of his wife. She testified, in part, as follows:

"Mr. Leslie came to our house one evening, a few days, perhaps a couple of days before the accident to talk over this plowing and work with Mr. Oestereich, and Mr. Oestereich spoke to him and told him, we made those repairs Sunday and yet you know the tractor don't work right. Mr. Leslie said he knew it, but he would get the necessary repairs as soon as possible, he felt it was getting late in the season and that it would freeze before he got all of his plowing done. He told him to go ahead and plow."

On Friday afternoon, November 4th, 1927, the plaintiff finished plowing the small tract as directed by the appellant and then proceeded to the next field to the north thereof, a portion of which had been previously plowed. He plowed around the field a few times until he came to places where the ditches were getting too deep to cross until they were plowed in. He had plowed in a few of these ditches before he met with the accident. He proceeded to plow down the side, throwing the dirt into the bottom of the ditch. At this point, the appellee testified:

"I came to this (ditch) where I had the accident, which was a lot deeper after I got up to the upper end of the ditch where it was getting deeper all the way, I pulled out around

it and not fill any further when something happened, I don't know what it was, it slipped or something, slipped, pulled my wheel into the ditch. Q. Was your plow directly behind your tractor after you slipped in? A. Yes, sir. Q. Was the tractor and plow sitting at an angle to each other after the front end had slipped into the ditch? A. Yes, a little, the front wheels slipped into the ditch, threw the front end of the tractor a little bit south and slid over a little, the front end—the rear end was in front of the plow. Q. Now what did you do when the front end slid into the ditch? A. I tried to back up, cramped my wheels so as to get out and backed up, but it was slippery and wet and the front end of the tractor wouldn't come out and I could not back up but about four feet, not over five, I tried to back out but I could not do that, the plow would rear up in front, and that is as far as I got. Q. Why was it you could not back? A. The plow would rear up, the hind wheel is not stationary and it lops over and the plow would raise up in front, it will not back up and lay over on its side. Q. What did you do after you tried to back·up? A. I saw I could not get out that way, so I disengaged the plow so I would work my front wheels over a little and the hind wheels further ahead so as to back out without running over the plow. I could have run over the plow and smashed it, but I didn't want to do that, wanted the front wheels around so I could get out. Q. What did you do then when you tried to get out in this manner? A. When I pulled up ahead to get my wheels cramped to get my rear end ahead far enough, I tried to disengage the clutch, and I could not do it, and·I tried to kick it out and didn't get it. Q. Then what happened? A. It fell over, I don't remember much about that, it was done pretty quick.''

The ditch at this point was from two to three feet deep. The rear tractor wheels went into the ditch with the power disengaged, or the machine in gear, because, as the appellee claims, the clutch stuck as it had done previously, and he was unable to disengage the power. The front end of the tractor raised upward and it stood in the ditch in a perpendicular position and pinned the plaintiff beneath the angle iron and between the tractor and the edge of the ditch. This angle iron rested across his left leg. He was unable to extricate himself from his precarious position, where he remained for three hours

or more before he was found in his dilemma and taken therefrom. His injury is serious and of a permanent nature. We will not dwell upon the character and extent of the injury, as without doubt, it is ample to support the verdict of $1500.00. The uncontradicted evidence is, that a new clutch was furnished by the company which sold the tractor to the appellant, and that sometime after the accident the same was installed in the tractor and the old clutch forwarded to the Company.

The appellant contends that the motion for a directed verdict should have been sustained for the reason, as claimed, that at the time of the injury, the appellee was not working in the course of his employment, because as claimed by him, the appellant had directed the appellee that, after he completed the plowing of the small piece northwest of the house, he should go into what is known in the record as the "bottom field"—a field other than that in which the appellee was plowing at the time of the accident. It is unquestioned that the appellee was employed to operate the tractor in plowing; that was a part of his general duty. Therefore, he was engaged at the time of the injury in the general course of his employment. It will be noted, from the testimony of the appellee and that of his wife, that, at the time of his injury, he was in the field which the defendant directed him to plow. The testimony of the appellant, that he was to plow in the "bottom field", only raises a conflict in the testimony on this question. Therefore, it cannot be held as a matter of law that the appellee at the time of his injury was a volunteer within the principle announced in Lindquist v. King's Crown Plaster Co., 139 Iowa 107, and Byram v. Illinois Central Railroad Company, 172 Iowa 631, and other similar cases relied upon by the appellant. As to this question, the court told the jury in the instructions that, if they found that the appellant had instructed the plaintiff to plow in a field other than that in which the appellee was plowing at the time in question, and that, at that time he was violating such instructions and plowing a field where he was not authorized to plow by the appellant, then the plaintiff at the time in question was not acting within the scope of his employment and that in such event, he could not recover. There is no exception to this instruction. Appellant's contention at this point is without merit,

as the testimony as disclosed by the record, clearly makes it a disputed question of fact for the determination of the jury.

Relative to appellant's contention that appellee assumed the risk arising out of the defective condition of the clutch, it is to be noted from the testimony hereinbefore set out, that, after the attempt on Sunday to repair the same by putting in of the clutch plate or disc, and before the plowing on Friday, the day of the accident, the appellant was fully informed and knew that the defective condition had not been remedied, and that the appellant promised to have the necessary repairs made thereon and directed the appellee to proceed with the tractor in the performance of the work. Under such circumstances, an employee, relying on the promise, may continue the use of the defective instrumentality for a reasonable time after the making of the promise without assuming the risk, unless the danger be so imminent that a reasonably careful and prudent person would not continue in the prosecution of the work; and as to what is a reasonable time in which the employee may continue the use of the defective machinery after promise of repair by the employer is ordinarily a question for the jury. Under the record, all of these matters were clearly questions for the jury. For authority on these propositions, see Buehner v. The Creamery Package Manufacturing Company, 124 Iowa 445; Picart v. Chicago Rock Island & Pacific Railway Company, 82 Iowa 148; Wible v. The Burlington, Cedar Rapids & Northern Railway Company, 109 Iowa 557; Huggard v. Glucose Sugar Refining Co., 132 Iowa 724; Miller v. White Bronze Monument Co., 141 Iowa 701; Johnson v. Minneapolis & St. Louis Railroad Company, 183 Iowa 101; Section 1495, Code, 1927. All of these matters are very carefully and properly covered by the court in one of the instructions as to which no exception was taken.

But the appellant contends that it was the duty of the plaintiff, under his employment, to keep the tractor in repair, and that because thereof, he assumed the risk arising out of the defective condition of the clutch. It is the positive duty of a master or employer to furnish his servant or employee with reasonably safe instrumentalities with which to do the work. While under certain circumstances, it may be competent for the master to impose on, and for the servant to accept by contract

or mutual understanding, the burden of inspection, examination, or even in some cases the maintenance, of appliances such as he is competent to make (see 39 C. J. 324) yet, the most that can be said in favor of appellant as to this proposition, is that the record makes it a jury question. The servant could hardly be expected to assume the burden of the expense of a new clutch, or any other necessary repairs to be made upon the tractor. Such was not specified in the contract of the parties and could not have been within the contemplation of the parties. The court instructed the jury that, if they found that it was the duty of the appellee, under his employment, to keep the tractor in repair, and that the clutch at the time in question was out of repair because of his failure to perform his duty to repair it, then the plaintiff assumed the risk and could not recover. Certainly, under the record as made, this is as favorable as the appellant could ask. The court would not have been justified in holding as a matter of law, that the appellee assumed this burden and that the appellee assumed the risk arising out of the defective condition of the clutch.

It is apparent from the record, that the jury could properly find that the clutch was defective and that such condition was the proximate cause of plaintiff's injury and that the evidence as to all propositions raised by the motion for a directed verdict is sufficient to support a verdict in favor of the plaintiff. The court did not err in overruling the motion for a directed verdict, and in submitting the disputed questions of fact to the jury for determination.

In Instruction No. 16, the court told the jury of the provisions of Sec. 11210, Code, 1927, and then added that:

"In order for the defendant to establish that the plaintiff was guilty of contributory negligence he must do so by a preponderance or greater weight of the evidence. And if you find that the defendant has so established that the plaintiff was guilty of contributory negligence, this is not a complete defense of plaintiff's action, but is available to the defendant only in mitigation of damages, which diminishes or lessens the amount which otherwise you would allow the plaintiff," etc.

The appellant complains as to that part of the instruction requiring the defendant to establish contributory negligence on

the part of the plaintiff by a preponderance of the evidence. Under the statutory law, Section 11210, Code, 1927, the burden as to this matter rests upon the defendant, and since the burden rests upon him, it was quite proper for the court to state that the matter should be established by a preponderance of the evidence. The appellant further complains that "the jury is told in said instruction that contributory negligence can only be plead in mitigation of damages." That contributory negligence in an action brought by an employee against his employer is not a complete defense in this state, see Section 11210, Code, 1927; Potier v. Winifred Coal Company, 192 Iowa 1280; Hunt v. Des Moines City Railway Company, 188 Iowa 1068, at 1074; 39 C. J. 822.

Section 11210, Code, 1927, provides:

"In all actions brought in the courts of this state to recover damages caused by the negligence of the defendant, the burden of proving contributory negligence shall rest upon the defendant. This section shall only apply to actions brought by an employee against his or her employer, or by a passenger against a common carrier, and in such cases contributory negligence may be pleaded in mitigation of damages."

In Hunt v. Des Moines City Railway Company, 188 Iowa 1068, at 1074, in referring to the error of the trial court for his failure to fully cover in the instructions the provisions of Section 3593-a, Supplemental Supplement Code, 1915 (now Section 11210, Code, 1927) we said:

"Nowhere in the charge is there any instruction that contributory negligence is available to defendant only as a plea in mitigation of damages, and not as a defense."

In Potier v. Winifred Coal Company, 192 Iowa 1280, at page 1286, in referring to the provisions of said section, we declared:

"It (the statutory provision) does provide, in effect, that his (the employer's) liability shall be confined to the comparative consequences of his own negligence, and shall not extend to the consequences of the negligence of the employee."

There is no merit in the exceptions of appellant to the aforesaid instruction.

█ In Instruction No. 5, the court told the jury that the burden is upon the plaintiff to show by a preponderance of the evidence that the defendant furnished the plaintiff with a tractor which had a defective clutch, substantially as claimed by plaintiff in his petition; that the defendant was negligent in causing or permitting plaintiff to operate the tractor with such defective clutch; that such defective clutch was the direct and proximate cause of plaintiff's injury and the amount of his damages; that if all of said matters are shown by a preponderance of the evidence, the plaintiff is entitled to recover, unless the defendant has established his defense of assumption of risk under the evidence and the instructions given. The defendant in the exception to this instruction states that "the defense of defendant by this instruction is narrowed down to the single defense of assumption of risk." There is no merit in this exception, for as we have seen in the discussion of the exceptions to Instruction No. 16, contributory negligence on the part of the plaintiff is not a complete defense, but available only in mitigation of damages. The question of contributory negligence is fully covered by Instruction No. 16. In so far as defendant's denial of the averments of the petition is concerned, it is properly cared for in this instruction.

The appellant also complains as to Instruction No. 18, but the matter now urged in argument was not raised by the exceptions to the instruction, and therefore, needs no consideration. We have carefully examined said instruction, in view of the exceptions to the instruction, and find no merit therein.

█ Appellant also complains as to Instruction No. 8, contending that the court did not therein require that the negligence of the defendant should be the proximate cause of plaintiff's injury. Said instruction relates only to what may constitute negligence on the part of the defendant. The question of proximate cause is fully covered by Instruction No. 10; and in the basic Instruction No. 5, the jury are plainly told that before the plaintiff can recover, they must find from a preponderance of the evidence that the defective clutch was the direct and proximate cause of plaintiff's injury. It is a familiar rule that instructions must be considered as a connected whole.

Elmore v. Des Moines City Railway Company, 207 Iowa 862. In so reading the instructions, they are comprehensive and easily understood and the jury could not possibly have been misled. There is no merit in appellant's complaint as to this instruction.

■ The appellant argues that the court erred for its failure to give certain requested instructions. This proposition was not properly raised in the trial court. In his exceptions to the court's instructions, he merely states that the court erred in refusing to give the requested instructions by number, without further specification as to wherein it is claimed that the court so erred. These exceptions do not comply with the provisions of Section 11495, Code, 1927. Exceptions in this form are not sufficient to entitle the appellant to have a review of the matter in this court. See Bodholdt v. Townsend, 208 Iowa 1350; Rogers v. Wolf, 195 Iowa 153.

■ The plaintiff states as error, the rulings of the court relative to the introduction of testimony, referring only to the lines and pages of the abstract. We have frequently held that statements of error in this form do not comply with Rule 30 of this court so as to present anything for review on appeal. See In re Estate of Work, 212 Iowa 31; Cary-Platt v. Iowa Electric Company, 207 Iowa 1052; In re Estate of Mott, 200 Iowa 948. However, after a careful reading of the transcript certified to this court, we fail to find any error in the rulings of the court relative to the introduction of testimony.

The appellant contends that the court erred in holding that plaintiff's petition states a cause of action. The proposition now urged was in no manner raised in the lower court, and requires no further consideration.

The appellant further contends that the verdict of the jury is contrary to the law as given by the court. We have carefully considered the entire record, in conjunction with the instructions given and find no merit in this contention of the appellant.

Having considered all of the grounds urged by the appellant for a reversal and having found no error, it follows, that the judgment of the trial court must be, and the same is hereby affirmed.—Affirmed.

FAVILLE, C. J., STEVENS, DE GRAFF, MORLING, and KINDIG, JJ., concur.